UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | No. S1 4:22 CR 378 MTS |
| ) | |
| ARTHUR GRASS,   ) | |
| ) | |
| Defendant.   ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Arthur Grass, represented by defense counsel David R. Rosener, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1, 2 and 3 of the Superseding Information, the government agrees that no further federal prosecution will be brought in this District relative to the defendant's wire fraud related to the selling of items stolen from Home Depot stores, from January 2023 through February 2023, being a felon in possession of a firearm on March 31, 2022, and conspiracy to steal and convert to his own use money belonging to the United States

1

government through fraudulent unemployment benefit applications filed from May 2020 through September 2020.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that neither party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).

## 3. ELEMENTS:

The defendant admits to knowingly violating Title 18, United States Code, Sections 371, 922(g)(1) and 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crimes are:

### COUNT 1
### (Felon in Possession of a Firearm)

*One*, defendant had been convicted of a crime punishable by more than one year imprisonment (felony);

*Two*, after that, defendant knowingly possessed a firearm;

*Three*, at the time defendant possessed the firearm, he knew he had a felony conviction; and

*Four*, the firearm was transported across state lines prior to defendant's possession.

### COUNT 2
### ( Conspiracy to Steal Money of the United States)

*One*, defendant and at least one other person reached an agreement to commit the crime of stealing and converting to their own use money belonging to the United States;

*Two*, the defendant voluntarily and intentionally joined the agreement;

*Three*, the defendant knew the purpose of the agreement when joined; and

*Four*, one of the participants took some act in furtherance of the agreement.

## COUNT 3
### (Wire Fraud)

*One*, the defendant voluntarily and intentionally participated in a scheme to defraud with knowledge of its fraudulent nature by means of falsehoods through material omissions, such scheme being the theft of Home Depot product and its sale thereafter;

*Two*, the defendant did so with the intent to defraud; and

*Three*, the defendant used an interstate wire communication in furtherance of the scheme, that is a Facebook Marketplace post.

**4. FACTS:**

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

**Count 1**

In early 2022, St. Charles County Police detectives obtained a search warrant to obtain location monitoring on Defendant Grass' cellular telephone related to an investigation into catalytic converter thefts. On March 31, 2022, detectives were alerted that defendant's telephone was located at On Wheels Storage, a storage lot for RVs, campers, and other vehicles. Detectives responded to On Wheels Storage and found defendant's Jeep parked on the lot. Detectives obtained a search warrant for the Jeep. During the seizure of the Jeep defendant was discovered to have been inside and was arrested on a pending wanted. A full search of the vehicle was conducted the following day. A fully loaded Glock, 19 Gen5 model, 9mm pistol,

3

bearing serial number BNCB399 was found in a toolbox located in the rear compartment of the Jeep.

The firearm, which was reported stolen, was sent to the St. Charles County Lab where it was test-fired and determined to function as designed. It was manufactured in the country of Austria and thus traveled in foreign and interstate commerce before defendant's possession

Defendant knew that prior to his possession he had a felony conviction for Possession of a Controlled Substance arising from a guilty plea on August 30, 2012 in St. Louis City Circuit Court.

**Count 2**

In May of 2020, defendant began to file fraudulent unemployment claims for approximately ten individuals. The individuals voluntarily disclosed their personal identity information to defendant in order for defendant, using his personal computer, to complete an online application on their behalf for unemployment benefits. Defendant falsely alleged that the individuals had been employed by his construction company, AJE Construction, and were recently laid off. In fact, the individuals never worked for AJE Construction. In each case, the applications contained defendant's email address, phone number, and mailing address. Defendant submitted these false applications to the Missouri Department of Labor, Division of Employment Security (MODES) the entity that administers the unemployment insurance program in Missouri.

Based on these false applications, unemployment benefits, distributed through Missouri Access debit cards, were mailed to defendant. Defendant then used the cards at an ATM or bank, taking a portion of the funds available before forwarding the card to each individual claimant. The chart below reflects the initials of defendant's conspirator, the date he submitted a

4

false application to MODES on their behalf, the date MODES sent by mail a debit card to defendant's address containing benefits for the conspirator, and the total UI benefits including extended benefits through Pandemic Emergency Unemployment Compensation, Pandemic Unemployment Assistance, and Lost Wages Assistance, stolen from MODES relative to each conspirator. In total, $142,423 was paid out by MODES on these false claims.

|  | AG | AC | CD | KT | GS | AS | RG | CM |
|---|---|---|---|---|---|---|---|---|
| Date of Application | 5/3/20 | 6/4/20 | 5/12/20 | 5/25/20 | 6/7/20 | 6/20/20 | 6/26/20 | 6/12/20 |
| Date of MODES mailing | 10/23/20 | 6/10/20 | 5/29/20 | 6/11/20 | 6/11/20 | 6/25/20 | 6/11/20 | 5/28/20 |
| Total UI benefits | $21,582 | $21,316 | $23,048 | $17,187 | $17,719 | $16,287 | $11,326 | $13,958 |

**Count 3**

Starting on January 4, 2023, defendant and an accomplice began to steal flooring from St. Louis area Home Depot stores. Defendant would enter the store and fill a cart with boxes of flooring and then add an inexpensive item. At the checkout counter, defendant paid for the inexpensive item but would claim that the flooring had been paid for on-line, producing a fraudulent receipt.

After stealing the flooring in this manner, defendant posted the flooring for sale on Facebook Market Place, with the fraudulent representation, through willful omission, that it was not stolen property. Unsuspecting purchasers then bought the flooring.

In particular, on January 6, 2023, defendant posted on Facebook Marketplace that he had Lifeproof vinyl flooring for sale. This post traveled in interstate commerce and contained materially false representations by omitting the fact that the vinyl flooring was stolen. This post furthered defendant's scheme to defraud purchasers of the vinyl flooring.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crimes to which the defendant is pleading guilty for Count 1 is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. For Count 2, imprisonment of not more than 5 years, a fine of not more than $250,000, or both such imprisonment and fine, and for Count 3, imprisonment of not more than 20 years, a fine of not more than $250,000 or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years on each count.

### 6. U.S. SENTENCING GUIDELINES:  2022 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

   a. **Chapter 2 Offense Conduct:**

**Count 1**

    (1) **Base Offense Level:** The parties agree that the base offense level is 20, as prescribed by Section 2K2.1(a)(4)(A) as defendant's prior conviction for domestic assault-2nd degree is a crime of violence.

    (2) **Specific Offense Characteristic:** The parties agree that 2 levels should be added pursuant to Section 2K2.1(b)(4)(A) as the firearm was stolen.

**Count 2**

    (1) **Base Offense Level:** The parties agree that the base offense level is 6, as prescribed by Section 2B1.1(a)(2).

**(2) Specific Offense Characteristic**: The parties agree that 8 levels should be added pursuant to Section 2B1.1(b)(1)(E) as the loss exceeded $95,000 but was less than $150,000.

**Count 3**

**(1) Base Offense Level**: The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(2).

**(2) Specific Offense Characteristic**: The parties agree that the following specific offense characteristic applies: 6 levels are added pursuant to Section 2B1.1(b)(1)(D) as the loss exceeded $40,000 but was less than $95,000.

**b. Chapter 3 Adjustments:**

**(1) Grouping:** Count 1 does not group (Group 1). Counts 2 and 3 group (Group 2) together pursuant to Section 3D1.2(d). The offense level for Group 2 is 17.

(a) Base offense Level: 7.

(b) Loss Amount: 10.

**(2) Combined Offense Level:** As Group 2 is 5 levels less serious than Group 1 it is counted as a one-half unit, adding 1 level to Group 1, pursuant to Section 3D1.4.

**(3) Acceptance of Responsibility:** The parties agree that two levels should be deducted pursuant to Section 3E1.1(a) because the defendant has clearly demonstrated acceptance of responsibility. Further, the government, under the facts known at present, will make a motion at the time of sentencing for an extra 1 level reduction based on defendant's timely notification of his intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the

7

defendant which it believes are inconsistent with defendant's eligibility for these deductions, the government may refuse to file a motion for an extra 1 level deduction and may present evidence to the court, and argue that the defendant should not receive all or part of the 2 level deduction pursuant to Section 3E1.1, without violating the plea agreement.

   c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 20.

   d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

   e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

   a. **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

   (1) **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to

9

sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $300, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court

will be due and payable immediately. Defendant specifically agrees to a restitution order of $163,405 related to Count 2 and $43,797 related to Count 3.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has

11

completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 5/9/23<br>Date | *John Ware*<br>JOHN J. WARE<br>Assistant United States Attorney |
| 5/9/23<br>Date | ARTHUR GRASS<br>Defendant |
| 5/9/23<br>Date | 4184?<br>DAVID R. ROSENER<br>Attorney for Defendant |